# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **TIFFANY CATHERINE SEGERSTROM,** | |
| **Plaintiff,** | **No. 16 C 10164** |
| **v.** | **Magistrate Judge Mary M. Rowland** |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]** | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tiffany Catherine Segerstrom filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Childhood Disability Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff moved for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Childhood Disability Benefits (CBD), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor Carolyn Colvin as the proper defendant in this action.  Fed. R. Civ. P. 25(d).

2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five—step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work—related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520[2]; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of

---

[2] The five-step sequential evaluation process applies to applications for childhood disability benefits under Title II. *See* 20 CFR 404.1520(a)(2).

proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for childhood disability benefits on January 14, 2013, due to learning disability, anemia, Von Willebrand's disease, and noise related anxiety, alleging disability since October 12, 2012. (R. at 86–87). The application was denied initially on May 2, 2013, and upon reconsideration on November 26, 2013, after which time Plaintiff filed a timely request for a hearing before an administrative law judge (ALJ). (*Id*. at 86–99, 100–14, 136–37). On January 28, 2015, Plaintiff appeared and testified in front of ALJ Daniel Dadabo. (*Id*. at 32-63). The ALJ also heard testimony from, Gloria Segerstrom, Plaintiff's mother, and Timothy Bobrowski, a vocational expert (VE). (*Id*. at 32, 63–85).

On April 29, 2015, ALJ Daniel Dadabo denied Plaintiff's request for benefits. (R. at 11–26). The ALJ applied the five-step sequential evaluation process and found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 12, 2012.  (*Id*. at 13). At step two, the ALJ found that Plaintiff had the following severe impairments: learning disorder with low average intellectual functioning and anxiety. (*Id*.). At step three, the ALJ found Plaintiff's impairments, alone or in combination, did not meet or medically equal a Listing. (*Id*. at 16).

The ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff has the RFC to perform a full range of work at all

exertional levels, "subject to the need for simple work that does not require a specific production rate, is routine and stays the same day-to-day, involving only occasional interaction with co-workers and supervisors, and which does not require public contact or work in tandem with others." (R. at 18). At step four, the ALJ noted that Plaintiff has no past relevant work. (*Id.* at 24). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the local economy that Plaintiff can perform, including cleaner/ housekeeper, surveillance system monitor, and hand packager. (*Id.* at 25). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of October 12, 2012 through the date of the ALJ's decision on April 29, 2015. (*Id.* at 25–26).

On August 27, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The

Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

# IV. DISCUSSION

In support for her request for reversal, Plaintiff argues that the ALJ: (1) failed to accord proper weight to the opinions of Plaintiff's treating physicians; and (2) improperly assessed Plaintiff's subjective symptom statements. (Pl.'s Mem., Dkt. 10 at 10–15).

## A. The ALJ Improperly Evaluated the Treating Physicians' Opinions

In Social Security disability claims, the opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016). Because a treating doctor has "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel,* 345 F.3d at 470.

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and

duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ improperly discounted the opinions of Dr. Kohn and Dr. Bidwell by giving insufficient reasons to reject their medical opinions as treating physicians. It is undisputed that Drs. Kohn and Bidwell are Plaintiff's treating physicians. Robert Kohn, DO, specializing in neuropsychiatry, evaluated and treated Plaintiff on at least ten occasions between July 2013 and November 2014. (R. at 450–473, 582–99). Dr. Kohn filled out mental capacities assessment forms that included both checkbox and narrative sections on December 30, 2013 and January 2, 2015. (*Id.* at 491–92, 606–07). Licensed clinical psychologist Jeremy Bidwell, Ph.D, conducted 17 therapy sessions with Plaintiff between September 2013 and December 2014. (*Id.* at 549–59). On January 30, 2014 and December 9, 2014, Dr. Bidwell filled out mental capacities assessment forms that included both checkbox and narrative sections. (*Id.* at 497–98, 578–80).

The ALJ accorded "no weight" to the opinions of Drs. Kohn and Bidwell because: 1) the checkbox questionnaires filled out by the doctors were "intended to further the claimant's litigation interests more than her medical interests"; 2) "these answers conflict with the objective evidence, including their own

observations, that the claimant's thought process was appropriate, coherent, logical, and goal directed, and her level of intelligence was average"; and 3) Plaintiff "has had consistent improvement in her mood, affect, behavior, and interpersonal abilities with therapy and is able to attend school with success." (R. at 23). There are several flaws in the ALJ's reasoning.

1. **The ALJ erred when speculating without evidentiary support that the treating physicians' opinions were biased.**

As an initial matter, the ALJ offers inadequate support for his contention that the opinions of Drs. Kohn and Bidwell may have been biased because they filled out checkbox forms offered by Plaintiff's attorney. An ALJ's mere conjecture of a sympathetic response is not an acceptable basis for ignoring a treating physician's opinion. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009). The ALJ must have a substantial evidentiary basis for finding bias by the treating physician. *Id.* Here, the ALJ gave "no weight" to the medical source statements of Drs. Kohn and Bidwell because

> Dr. Kohn and Bidwell submitted two checkbox questionnaires created by the claimant's attorney that includes a number of leading questions and similar inducements. The form is not designed for objectivity, but rather for verification of some preconceived suggested conclusions about the claimant's alleged diminished mental health. Indeed, all checkboxes require that the doctor indicate the claimant has some type of limitation. It is intended to further the claimant's litigation interests more than her medical interests.

(R. at 23). However, the ALJ does not point to any specific questions that are leading or offer support for his speculation that the forms are biased. Contrary to the ALJ's assertion, the mental capacities assessment forms filled out by Drs. Kohn and Bidwell allow the assessor to indicate that the claimant is "not significantly

limited" in any of the areas assessed. As Plaintiff correctly notes, Drs. Kohn and Bidwell indicated that Plaintiff was "not significantly limited" in multiple areas of functioning.  (*Id.* at 491–92, 497–98, 579–80, 606–07).

Further, the forms allow the doctors to offer narrative explanations of their assessments beyond the checkboxes.  Significantly, the ALJ failed to discuss Dr. Kohn and Dr. Bidwell's narrative explanations for their responses. (R. at 23, 492, 498, 580, 607). It is well-established that "an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982)). The ALJ did not do so here.

In the narrative portion of the December 30, 2013 assessment, Dr. Kohn explained that Plaintiff cannot function in a job setting in a reliable manner because of "deficits with cognitive flexibility; switch in routine or new set of rules is very challenging." (R. at 492). Dr. Kohn noted that Plaintiff has "anxiety regarding new or change in routine," "visual / auditory history of learning disorders (reading and math)," "deficit with attention processing speed and set shifting," and concluded that "cognitive deficits, learning disorder and secondary anxiety are permanent limitations to working full time." (R. at 492). Similarly, on the January 2, 2015 assessment, Dr. Kohn concluded that Plaintiff cannot function in a job setting in a reliable manner because of "social stress and impaired working memory." (*Id.* at 606–07). He further indicated that Plaintiff is not responsive to medications, has

developmental and learning processing disorders as well as anxiety. He also referred to his treatment notes in support of his assessment.

Likewise, Dr. Bidwell included as part of his narrative explanation in his January 30, 2014 assessment that Plaintiff cannot function in a job setting in a reliable manner due to "several neurocognitive impairments (memory, processing, speed, etc.) as well as social and performance based anxiety." (R. at 498). In support of this assessment, Dr. Bidwell explained, "[Plaintiff's] Neuropsychological testing report dated July 2013 demonstrated impairments in multiple areas including verbal learning and memory. I have also observed substantial anxiety during her participation in a cooking class and would expect this to limit her functioning in a more demanding setting and at work." (*Id.*). Additionally, in the narrative portion for the December 9, 2014 assessment, Dr. Bidwell concluded that Plaintiff cannot function in a job setting in a reliable manner because Plaintiff "struggles significantly with memory and learning complex tasks. She also experiences a great deal of anxiety when required to perform on demand." (*Id.* at 580). Dr. Bidwell also noted that Plaintiff's "cognitive impairments related to memory and task learning through my treatment sessions with her. These limitations combined with her chronic fatigue would make performing in a work environment quite difficult for her." (*Id.*). Because the ALJ did not acknowledge any of these narrative explanations, the Court cannot determine whether the ALJ considered these when evaluating the opinion evidence.

The Court finds that the ALJ erred when he found the forms filled out by the doctors were biased, and by failing to address the narrative explanations provided by the doctors when discounting their opinions. *See White ex. rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999); *Myles*, 582 F.3d at 678; *Scrogham*, 765 F.3d at 698.

**2. The ALJ erred in finding the treating physicians' opinions conflict with the objective medical evidence and their own observations**

Next, the ALJ gave "no weight" to the opinions of Drs. Kohn and Bidwell because he found that they "conflict with the objective evidence, including their own observations, that the claimant's thought process was appropriate, coherent, logical and goal directed, and her level of intelligence was average." (R. at 23). However, the ALJ failed to adequately support these findings.

The ALJ cites to four places in the record to support this claim including a psychological evaluation conducted by Timothy Sterzik, Psy.D., where Dr. Sterzik states that Plaintiff "demonstrated a logical and coherent thought process," (R. at 410); and three notations in Dr. Kohn's progress notes dated April 2, 2014, August 25, 2014 and November 24, 2014 where he indicated on a mental status examination that Plaintiff's thought processes were "appropriate, coherent and goal directed" and that Plaintiff's level of intelligence was "average," (*id.* at 583, 587, 595). Absent from the ALJ's analysis is Dr. Sterzik's diagnosis of a learning disability in the same psychological evaluation, (*id.* at 410), or Dr. Kohn's indication that Plaintiff's neurocognitive index was three standard deviations below the mean

due to slow reaction time and complex attention deficits as well as low psychomotor processing speed, (*id.* at 471).

The ALJ also does not address other evidence that Dr. Kohn cites in support of his assessments such as Plaintiff's academic educational evaluations and a neuropsychological evaluation conducted by Dr. London on July 25, 3013, indicating that Plaintiff had significant verbal and visual memory deficits. (R. at 492, 480–88). The ALJ's failure to do so was error. *See Scott*, 647 F.3d at 739–740 ("The ALJ was not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits"); *Scrogham*, 765 F.3d at 697 (finding the ALJ erred when she "neither considered nor explained her decision not to consider the rest of [a treating physician's] copious records, which, upon closer review, might indicate that [claimant] was substantially more limited in his physical abilities than the ALJ initially concluded."). Indeed, "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

### 3. The ALJ improperly equated improvement with an ability to work.

Next, the ALJ erred in discounting the opinions of Drs. Kohn and Bidwell because Plaintiff had "consistent improvement in her mood, affect, behavior, and interpersonal abilities with therapy and is able to attend school with success." (R. at 23). "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739–40. In order to discount the opinions of Drs. Kohn and Bidwell based on Plaintiff's response to

treatment, the ALJ must connect how her improvement restored Plaintiff's ability to work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott*, 647 F.3d at 740. The ALJ failed to do so here. Additionally, the ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. Although the ALJ points to some notations in Dr. Bidwell's treatment notes of improvements in Plaintiff's mood and her ability to attend school with success, (*id.* at 23, 554–59, 569–76), the ALJ fails to address treatment notes indicating that Plaintiff suffers from "increased anxiety," "continued difficulties with insomnia," and that "the initial behavioral and cognitive interventions utilized have also not been significantly effective," (*id.* at 550-52, 571, 573, 576). *See Scott*, 647 F.3d at 739-740 ("The ALJ was not permitted to 'cherry-pick' from ... mixed results to support a denial of benefits").

### 4. The ALJ failed to address the regulatory factors

Finally, although the ALJ is not required to give the opinions of Drs. Kohn and Bidwell controlling weight, he still must address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Here, the ALJ failed to minimally address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not analyze the nature and extent of the treatment relationship, the frequency of examination, the supportability of the

decision, or whether Drs. Kohn and Bidwell had a relevant specialty. The ALJ is required to "sufficiently account [ ] for the factors in 20 C.F.R.§ 404.1527." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (unpublished decision). The ALJ's failure to do so prevents this Court from determining the reasonableness of the ALJ's decision in light of the factors outlined in 20 C.F.R. § 404.1527. For the reasons described herein, the ALJ did not offer substantial evidence for rejecting the opinions of Drs. Kohn and Bidwell, which is an error requiring remand.

### B. Other Issues

Because the Court is remanding to reevaluate the weight to be given to the treating physicians' opinions, the Court chooses not to address Plaintiff's other argument that the ALJ failed to make a proper credibility determination regarding Plaintiff's mother's testimony. However, on remand, after determining the weight to be given to the treating physicians' opinions, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all the evidence of record, including the testimony of Plaintiff and Plaintiff's mother, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy*, 759 F.3d at 817 (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

### C. Remedy

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits or, in the alternative, a reversal with a remand for further proceedings. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe ex. re. Taylor*, 425 F.3d at 355 (citation omitted). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 9) is GRANTED. Defendant's Motion for Summary Judgment (Dkt. 14) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated:  December 19, 2017          E N T E R:

MARY M. ROWLAND
United States Magistrate Judge